THOMAS MEEHAN, Trustee in Bankruptcy of John Pirvitz, Bankrupt, Appellee, v. HENRY C. PITHAN, Appellant.

**Bankruptcy:** FRAUD: CONCEALMENT OF PROPERTY: EVIDENCE. In this action by a trustee in bankruptcy to recover money claimed to have been received by defendant and held for the purpose of aiding the bankrupt in defrauding his creditors, the evidence is held to show that a sum paid defendant from the proceeds of the sale of property prior to bankruptcy was so paid and held in fraud of creditors.

*Appeal from Crawford District Court.*—HON. F. M. POWERS, Judge.

MONDAY, JUNE 29, 1914.

ACTION by trustee in bankruptcy to recover of the defendant certain money claimed to have been received and held

by defendant for the purpose of aiding the bankrupt in defrauding his creditors. Judgment and decree for the plaintiff. Defendant appeals.—*Affirmed.*

*Mayne & Green,* and *Harding & Kahler,* for appellant.

*Shaw, Sims & Kuehnle,* for appellee.

GAYNOR, J.—The plaintiff claims:

(1) That on or about the 21st day of December, 1908, one John Pirvitz filed his petition in bankruptcy in the District Court of the United States, in and for the Southern District of Iowa, at Council Bluffs, and was then and there duly adjudged a bankrupt.

(2) That the only claim proven against his estate is that of one John W. Pithan in the sum of $2,700 and upwards, based on the certain judgment rendered the 4th day of December, 1908, in the certain action wherein the said John W. Pithan was plaintiff and the said John Pirvitz was defendant.

(3) That the plaintiff is the duly appointed, qualified, and acting trustee in bankruptcy of the said John Pirvitz.

(4) That on and prior to the 3d day of December, 1908, the said John Pirvitz was the owner and in the possession of certain personal property subject to execution of the full value of $2,500 and upwards.

(5) That on and prior to said last-named date, the defendant, Henry C. Pithan, confederating and conspiring with the said John Pirvitz, with the intent to hinder, delay, and defraud the creditors of the said John Pirvitz, and particularly the said John W. Pithan, caused the said property to be sold and disposed of. That the claim of the said John W. Pithan against the bankrupt estate of the said John Pirvitz was duly filed in said bankruptcy proceeding, and allowed for the full amount thereof.

(6) That out of the proceeds of the sale of said property the defendant, shortly thereafter, and without the payment of any consideration therefor, received the sum of $800, with the fraudulent and unlawful intent to aid the said John Pirvitz in hindering, delaying, and defrauding his creditors, and did then and there wrongfully and unlawfully convert the same to his own use and benefit.

(7) That by reason of the matters and things herein set forth the said moneys so wrongfully taken and appropriated by the defendant belong to the estate of the said John Pirvitz, and constitutes a trust fund, in the hands of the defendant, for the use and benefit of said estate.

Wherefore the plaintiff prays that a decree may be entered finding said transfer of said funds to the defendant, to have been wrongful and fraudulent, and that said funds, in the hands of the defendant, constitute a trust fund for the use and benefit of the bankrupt estate of the said John Pirvitz, and that plaintiff, as trustee, have judgment against the defendant for the said sum of $800, together with interest and costs, and that he have such other and further relief as to the court may seem equitable and just in the premises.

The defendant filed two answers to this petition, neither of which appears to be an amendment to, or substitution for, the other. In each of the answers, the defendant denies each and every allegation therein made, not expressly admitted. In the first answer, he admits the allegations of paragraphs 1 and 2, except that he denies that the judgment is wholly unpaid. In the other answer, defendant admits the allegations of paragraph 1 of the petition, and admits that the plaintiff is a qualified and acting trustee in bankruptcy of the said John Pirvitz. Upon the issues so tendered, the cause was tried to the court, and judgment entered for the plaintiff, with the court's findings upon the issue as follows:

The court finds that during the month of December, 1908, the defendant received from the bankrupt, John Pirvitz, named in the petition, the sum of $800, with the fraudulent intent on his part to aid and assist the said John Pirvitz in hindering, delaying, and defrauding his creditors, and did wrongfully and unlawfully appropriate said funds to his own use and benefit; that the said funds belonged to the estate of the said John Pirvitz, bankrupt, and constitute a trust fund in the hands of the defendant, for the use and benefit of said bankrupt estate; that the equities of this cause are with the plaintiff; and that the plaintiff is entitled to judgment and decree as prayed in his petition. It is therefore ordered and adjudged and de-

creed that the said sum of $800 with interest thereon at the rate of 6 per cent. per annum from January 1, 1909, constitute a trust fund in the hands of the defendant for the use and benefit of the bankrupt estate of the said John Pirvitz, bankrupt, and the defendant, Henry C. Pithan is hereby ordered and directed forthwith to pay the said sum of $800 together with interest thereon at the rate of 6 per cent. per annum, from the 1st day of January, 1909, over to the plaintiff as trustee in bankruptcy of the said bankrupt estate of said John Pirvitz, bankrupt. It is further ordered and adjudged that the plaintiff have judgment against the defendant, Henry C. Pithan, for the costs of this action taxed at $————, and that execution issue therefor. To all of which the defendant excepts.

The defendant appeals, and complains of the action of the court in establishing the claim and entering the decree against him, on the ground that the property in controversy, the $800, did not belong to John Pirvitz, the bankrupt, nor to his estate, and that the title did not therefore pass to the plaintiff, trustee in bankruptcy; that, at the time Pirvitz filed his petition in bankruptcy, the fund in controversy here never had been transferred to this defendant by the bankrupt, neither the fund in suit or any portion of it; that the fund in suit had never been wrongfully taken and appropriated by this defendant; that this defendant had never received it or held it, with any intent of hindering, delaying, or defrauding John Pirvitz's creditors, or otherwise, and the evidence fails to show a state of facts upon which it can be. found that defendant wrongfully and unlawfully converted this fund to his own use, as charged by the plaintiff in his petition.

This case presents practically a fact question only.

It appears from the record that on the 29th day of August, 1908, one John W. Pithan commenced an action in the district court of Crawford county, claiming damage of Pirvitz for injury sustained by the running away of a team. The petition in that action was filed on the 29th day of August, 1908. The notice was served on Pirvitz on the 30th

day of August. Pirvitz, at that time, was a tenant. The defendant herein, Henry C. Pithan, was his brother-in-law. Pirvitz had considerable personal property, both exempt and nonexempt. After the commencement of that action against Pirvitz, and on the 7th day of September, 1908, Pirvitz executed a bill of sale, to the defendant herein, of all his property for a recited consideration of $3,117. It appears that no part of this consideration was paid by the defendant to Pirvitz, at the time, or any time. Nor did the defendant take possession of this property under the bill of sale.

The trial of the action of John W. Pithan against John Pirvitz was commenced on November 30, 1908, and on that day the defendant, H. C. Pithan, without having paid Pirvitz anything for the property, without having taken possession of the property, and without having assumed any control or dominion over it, made a bill of sale of this same property to one Herman Garbe. The consideration named in this bill was $3,400. It appears that Garbe paid nothing for this bill of sale, either to Pirvitz or to H. C. Pithan, the defendant. It appears that he, too, never took any possession of this property, or assumed any control over it. The property still remained in the possession of Pirvitz.

On the evening of December 2, 1908, the verdict was returned in the action then pending against Pirvitz, in favor of John W. Pithan for $2,700. On the 3d day of December, Herman Garbe reconveyed this property by bill of sale to John Pirvitz, and on the same day Pirvitz sold the property to one C. T. Marshall. This sale included all the property covered by the bills of sale, theretofore made, except such as was exempt to Pirvitz and excepting a team of horses and a wagon and harness, which, on the same day, Pirvitz sold to one William Peters. It appears that Marshall and Peters paid Pirvitz for the property purchased by them, and with the proceeds thus obtained Pirvitz paid the rent due his landlord, and paid some other bills, and had, of the proceeds of the sale of the property, about $800, left. With this money it is claimed that

Pirvitz, in company with the defendant, Henry C. Pithan, went to Nebraska, and it is claimed that while there they learned that one Capell, of Council Bluffs, owned a certain eighty acres of land. It is claimed that Pirvitz desired to invest his $800 in land. The record is very meager concerning this visit to Nebraska by defendant and Pirvitz if any such visit was made. Anyway, it is claimed that they purchased eighty acres of land from Capell at $20 an acre, and paid Capell, on the purchase price, the $800 heretofore referred to; that Capell executed to Pirvitz a contract for the Nebraska land and took an obligation for the balance of the purchase price. Neither the note or the contract are before us in this record, and we are not able to determine, from the record, what the provisions of the contract were, or what time was given Pirvitz to pay the balance of the purchase price. It is claimed that Pirvitz paid to Capell the $800 received from the sale of his personal property. This is the $800 in controversy. It is claimed that there was some agreement or arrangement between the defendant and Capell, by which Capell paid to the defendant, out of the $800 so received from Pirvitz, the sum of $300 as a commission to the defendant for procuring a purchaser, or in effecting the sale.

The claim of the defendant is that this $800 received by Pirvitz and retained by him out of the proceeds of the sale of his personal property was paid by Pirvitz to Capell, upon this land deal; that the defendant received none of this money from Pirvitz; that all the money received was $300 paid to him by Capell, after the deal between Capell and Pirvitz was closed; and that this was paid to him by Capell, as a commission for his services in effectuating the sale.

Facts about which there is controversy may be sometimes so stated that, if the correctness of the statement be conceded, all controversy ought to cease. If the disposition of the $800 in controversy was made by Pirvitz to Capell, as above claimed by the defendant, and defendant received no portion of it from Pirvitz, but received the $300 as a commission from

Capell, out of money received by Capell, in good faith, on a bona fide sale, and as a commission for services rendered Capell, then this case would stop right here, and judgment would be ordered for the defendant. It is our duty to determine what the real truth of this controversy is from the whole record, and not from the testimony of any one witness.

We think there can be no controversy, under this record, that when the suit was commenced by John W. Pithan against Pirvitz, on August 29, 1908, Pirvitz made a bill of sale to the defendant of all his property not exempt from execution for the purpose of placing it beyond the reach of an execution, in the event judgment should be entered in favor of John W. Pithan. It will be noticed that the original notice was served on the 30th day of August; that on the 7th day of September the bill of sale was made by Pirvitz to the defendant, H. C. Pithan; that this bill of sale was put upon record, and the property stood in that situation, the record title to it being in H. C. Pithan up to the day of the commencement of the trial in that suit. On that day, H. C. Pithan, the defendant herein, although he had never taken possession of the property, or paid to Pirvitz any portion of the consideration named in the bill of sale, conveyed the property to Garbe. This bill of sale was then put upon the record, although no consideration was paid by Garbe therefor, and Pirvitz's possession of the property in no way disturbed. On the 3d day of December, 1908, the very day on which the verdict was returned, Garbe reconveyed the property to Pirvitz, and Pirvitz immediately sold and delivered the property to Marshall and Peters, who were undoubtedly innocent purchasers, without notice, and for a valuable consideration. The hand of the defendant is seen in each transaction. There remained then only this $800 of the proceeds of the entire property owned by Pirvitz, which was not exempt from execution. With this $800 the defendant and Pirvitz go to Council Bluffs. They there meet with Mr. Capell, who has land in Nebraska, that he has never seen, the value of which he has no personal knowledge. There is no

positive and direct testimony that either Pirvitz or the defendant ever saw or examined this land. Neither the defendant nor Pirvitz testified to having made an examination of this land, or of the title to it. They claim that they purchased it from Capell and agreed to pay him $20 an acre, or $1,600; that they paid him $800 on the purchase price, this $800 which was the proceeds of the sale of the property and which is in controversy here. This payment is claimed to have been made on December 7, 1908, to Capell, or four days after the verdict was rendered in the case of John W. Pithan against Pirvitz, and four days after the sale of the property to Marshall. We have nothing further done by either the defendant or Pirvitz as to this land. If their contention is true, they paid Capell $800 on a piece of land of uncertain value, and then abandoned the deal after the money was paid. On the 21st day of December, 1908, John Pirvitz filed his petition in bankruptcy and was thereafter adjudged a bankrupt.

Pirvitz testified as follows:

I thought I could get the money to hold that land. They had levied on my property and I couldn't get the money. I turned the contract for the Nebraska land over to the fellow I bought it from. I did not get any of the $800 back. I do not know who holds the land now. I do not know what Capell did about the contract. He is the man I bought it from. I never tried to get anybody to take care of the contract for me. When I filed my petition in bankruptcy, I described, in my petition, all the property left after the sale to Peters and Marshall and I claimed it as exempt. I never moved to Nebraska. I knew when I went to Nebraska that the law would allow me to keep this property that I had left on the farm. I was in the same condition when I came back from Nebraska as when I went there, except that I had paid out the $800.

Capell, in testifying for defendant, said, in substance, that Pirvitz and Pithan came to him together and asked him whether he owned land out in Greeley county, Neb. This was about December 7th. He said he had seen them a few days before that. Defendant did most of the talking. Pirvitz had

little to say. Defendant was kind of turning Pirvitz, I thought. That is, using him. I took it from what they said that they had been out to see the land. When they first came, I made arrangements with the defendant to act as my agent in the sale of the land to Pirvitz. He said he would act. Capell further says he sold the land again, and within about eight months, for between $200 and $300.

Capell, however, claims in his testimony that he sold the land to Pirvitz for $1,600; that Pirvitz paid him $800 and gave his note for the balance; that he gave Pirvitz a contract; that he paid the defendant $300 for procuring a purchaser.

One F. H. Brown, called as a witness for the plaintiff, testified that in the summer of 1908, about the time of the accident, to John W. Pithan, which was the basis of the suit against Pirvitz, he had a conversation with the defendant, Henry C. Pithan, touching the accident, and the possibility of a suit against Pirvitz for damages, and defendant said he would have Pirvitz give him a bill of sale of his stuff, and see what they could do then; that he would have Pirvitz give him a bill of sale of all his property, and then see if John W. Pithan could get anything out of Pirvitz in damages. He testified further that defendant, Henry C. Pithan, told him, just before the trial was finished, that he had sent Pirvitz home so that he could dispose of his stuff and get the money; that he would have to give an account of it, where it went. He said that the attorney told him that he (Pirvitz) should go home and dispose of his stuff because they were beaten, and he was going to take him through bankruptcy, and he would get him through that way; that Pirvitz had gone home to sell his property to Marshall.

Brown testified as follows on this point:

He (defendant) told me, after the sale, they had come home and sold the stuff, and Marshall had taken his team and two or three of the cattle and the hogs, and that he had bought the corn and paid him for it, and, when the sheriff came there, he would get fooled, that the stuff would be sold and

gone, except the corn, and they couldn't move that then. I know about Henry Pithan going to Nebraska about that time with John Pirvitz. He told me he went. I was over the night he came back. He said he had been to Nebraska and John had bought a farm out there, and he had some of the ground in an envelope, which he showed me, and talked about having bought the land of some man in Council Bluffs, and had paid $800 down on the contract, and he would have to pay $800 more in thirty days, or he would lose the $800 he had paid. This deal was made in one room and the deal approved, and the money paid down, and in the next room it was given back to him (defendant), and he put it in some bank there. Henry C. Pithan said that, and then he took it out and fetched it up there. He said this was part of the money that John had in the bank at the time. Henry said it was a humbug, and that he went out there and fetched a little sample of sand, and that was the kind of land that he bought, and then he said, if Pirvitz did not pay this other $800 in a certain length of time, he lost the $800 he had put into it. He told me he had been out in Nebraska and told me the place, but I don't remember those things now. He said he and John went out together, and that the deal was made in Council Bluffs, and that he paid $800 over for Pirvitz. He said he paid it to this man and they bought the land in one room, and Pirvitz paid this to this man, and then he went into the next room, and this man paid it back to Henry. Henry said that Mr. Harding said they would have to show where this money went, and they put this money in this land to show that they had disposed of it. And he said Mr. Harding had worked up some kind of a deal to get out of it and do something with the money so they could save the money and so they could explain it. Henry Pithan said Mr. Harding said they had to give account for all this money, for all of this property they had sold; that is about all I remember. Henry Pithan told me that John Pirvitz paid some man there in Council Bluffs for that Nebraska land, and it was paid in one room to this man, and in the next room he paid it back. The man went into the other room with Henry Pithan and gave the money back to Henry Pithan. Pithan said he put it in the bank at Council Bluffs, and left it there for awhile, and then brought it up and put it in this bank to his own account. He said he was going to give it back to Pirvitz some time, but he hadn't at the time I was talking to him.

H. E. Gries testified for the plaintiff as follows:

I know Henry C. Pithan, the defendant, and know Herman Garbe. Recall hearing about the injury to John W. Pithan in a runaway accident in which Mr. Pirvitz's team ran away and injured him. I was over at Garbe's place near Charter Oak shortly after the accident occurred. I was helping Mr. Pithan to build Garbe's house. I was telling Mr. Pithan that I heard John Pithan was going to sue Pirvitz for damages, and Henry Pithan says: 'That will be easy. We will have Mr. Pirvitz make a bill of sale for his stuff and then see what he can do.'

T. V. Walker, testifying for the defendant, said that he had a conversation with the attorney, Mr. Harding, in which Mr. Harding told him, in a roundabout way, that he was not satisfied; that the Nebraska land was an improvident deal, and I asked him why they did not sue to recover the money back. He said they had gotten it back; the defendant was there at the time; that Mr. Harding made these statements in the presence of the defendant and some stranger.

It was stipulated in the trial that, if the trustee in bankruptcy was called as a witness, he would testify that all the property turned over to him, as trustee of the estate of John Pirvitz, was the contract from Capell, and that nothing was realized from this; that the only money collected by him, in behalf of the estate, was $350 paid by P. W. Harding; that this amount, collected from Harding, was money paid him by Pirvitz as attorney fee, in defense of the suit of John W. Pithan against Pirvitz.

Some testimony was introduced in behalf of the defendant tending to impeach the witness Brown by showing that his general reputation for truth and veracity in the neighborhood was not good. The defendant, however, did not go upon the stand in his own behalf, nor deny any of the statements made by Brown touching conversations had with the defendant, as hereinbefore set out.

There was much testimony introduced which has no

relevancy to the issues here, and we do not attempt to review it. It is contended, however, that inasmuch as this real estate contract entered into between Capell and Pirvitz was filed with the trustee in bankruptcy, as an asset, that that was a ratification of that transaction on the part of the trustee and of the disposition made of the money in controversy. It does not appear, however, who it was that listed this with the trustee in bankruptcy. Pirvitz testified that he returned it to Capell. We are satisfied from this whole record that the transaction touching this $800 was only a subterfuge, carried on for the purpose of enabling Pirvitz to avoid listing this $800 as an asset of the estate, and that the judgment of the court in holding that this property was still in the hands of the defendant, received by him, and held by him, for the purpose of defeating and defrauding the creditors of John W. Pirvitz, has substantial support in the record, and is therefore affirmed. Through all this transaction, from the very beginning of the suit of John W. Pithan against Pirvitz, to the final act of Pirvitz in seeking relief in bankruptcy, the hand of the defendant was at the helm, and this record is such that we cannot believe that the disposition of the $800 was made in the manner contended for by the defendant. However, we must say that we are impressed with the idea that counsel who have appeared in this court are in no way responsible for what appears to us a palpable effect to thwart the ends of justice and accomplish a palpable wrong.

The case is—*Affirmed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concurring.